(90 South. 140)

STEVENSON v. STATE.    (8 Div. 754.)

(Court of Appeals of Alabama.    April 5, 1921. Rehearing Denied June 7, 1921.)

1. **Criminal law ⟿279—Plea in abatement is properly stricken, where filed after pleading to merits.**

The sustaining of solicitor's motion to strike a plea in abatement to an indictment for murder, on the ground that defendant had on a prior day pleaded to the merits, *held* not error, in view of Code 1907, § 7573.

2. **Witnesses ⟿270(2)—Sustaining objections to defendant's questions asked plaintiff's witness as to the whereabouts of one not subpœnaed held not error.**

In a murder prosecution, the sustaining of objection to cross-examination of state's witnesses, seeking to show the whereabouts of a person who had not been subpœnaed by either side as a witness, *held* not error, where it does not appear that such person's whereabouts would shed any light on the issues involved.

3. **Criminal law ⟿670—Defendant's counsel's saying he was asking the whereabouts of one not subpœnaed for the purpose of securing him as a witness held insufficient to render admissible.**

The statement of defendant's counsel that he was asking state's witness on cross-examination for the whereabouts of a certain person, in order to use him as a witness, *held* insufficient to show the relevancy or admissibility of such testimony, where defendant had not requested a subpœna for such person before entering on the trial or during its progress.

4. **Criminal law ⟿1153(4)—Latitude of cross-examination of witnesses is within trial court's discretion.**

The latitude permissible in cross-examining a witness in a criminal prosecution is necessarily left largely to the discretion of the trial court, whose rulings will not be reversed on appeal, where the record shows no abuse of such discretion.

5. **Homicide ⟿268—Whether the state's or defendant's version was correct held a jury question.**

In a prosecution for murder, where the court fairly stated the tendencies of the evidence on both sides, as well as the law applying to the theory relied on by both, it was under such charge, for the jury to say whether the state's version or that of the defendant was correct.

6. **Criminal law ⟿836—Trial court's indorsement of reason for refusal of instruction is proper.**

In a criminal prosecution, the court's indorsement on each of the refused charges of the reason for refusal is a wise and proper precaution.

7. **Homicide ⟿300(4, 12)—Elliptical and argumentative instructions on self-defense properly refused.**

In a prosecution for homicide, defendant's elliptical and argumentative instructions on the law of self-defense *held* properly refused.

---

⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 17 Ala. App. 464.

**8. Criminal law ⊝⇒798(I)—Instruction that each juror must be convinced beyond reasonable doubt properly refused.**

In a homicide prosecution, a charge that, unless each juror is separately and severally satisfied beyond a reasonable doubt of defendant's guilt, he should not be convicted, was properly refused,

**9. Criminal law ⊝⇒763, 764(I)—Charges on effect of evidence held properly refused.**

Charges, clearly on the effect of the evidence, as stated by the trial judge in passing on them, were properly refused.

## On Rehearing.

**10. Homicide ⊝⇒169(2)—In prosecution for killing a deputy sheriff, whether sheriff carried to scene the party to whom accused illegally sold liquor held immaterial.**

In a prosecution for murder of deputy sheriff, while attempting to arrest defendant for violating the liquor law, where the defense was that the defendant thought the officers were robbers, whether the sheriff carried the negro, to whom defendant's illegal sale of liquor was made just prior to the killing at the place of sale, *held* immaterial.

**II. Homicide ⊝⇒339—Sustaining objection to question held not error, where information sought was given by the witness.**

In a prosecution for murder of a deputy sheriff, while attempting to arrest defendant for an illegal sale of intoxicating liquors, defended on the ground that defendant thought the officers were robbers, sustaining an objection to questions asked the sheriff and his son as to whether they had made arrangements with the buyer, a negro, for purchasing the liquor, *held* harmless, where both testified that they did not carry the negro out with them, and did not arrange for him to come, and did not know that any party had arranged with him.

**12. Witnesses ⊝⇒282½—Court may sustain objection to question which witness has answered specifically and repeatedly.**

In a prosecution for murder where state's witness had answered defendant's question specifically and repeatedly, the trial court cannot be put in error for excusing such witness from answering the question further.

**13. Criminal law ⊝⇒1134(6)—Improper reason for refusal of an otherwise properly refused instruction is not error.**

Where defendant's requested charge was properly refused, such refusal would not become error, if the court should assign an improper reason for its refusal.

**14. Criminal law ⊝⇒755½—Stating matters, not as facts, but as showing state's and defendant's contentions, held proper.**

It is proper for the court to state to the jury matters not stated as facts, but showing the contention of the state and the defense as to the respective theories of the case and parts of the evidence in the murder prosecution.

**15. Homicide ⊝⇒244(I)—Evidence held not to show defendant without knowledge that officer he killed was attempting to arrest him.**

In a prosecution for the murder of a deputy sheriff, while attempting to arrest defendant for violation of liquor laws, defended on the ground that defendant thought the officers were robbers, *held*, that defendant's contention that the undisputed evidence afforded nothing to show that defendant had any knowledge of the officers' identity, or that they were attempting to arrest him, *held* not sustained by the record.

Appeal from Circuit Court, Lauderdale County; C. P. Almon, Judge.

Tom Stevenson was indicted for murder in the first degree, and convicted of murder in the second degree, and he appeals. Affirmed.

Certiorari denied 206 Ala. 701, 90 South. 926.

The defendant is alleged to have killed one Carl Anderson, a deputy sheriff; the insistence of the state being that he knew that the persons who approached him were officers of the law, attempting to arrest him for a violation of the state prohibition law, and the defendant contending that he was unaware of the identity or character of the persons, and was under the impression, reasonably created and entertained, that they were robbers or other persons attempting to rob him.

The following are the charges mentioned in the opinion as having been refused to the defendant:

(1) The court charges the jury that the bare fear of the commission of the attack, to prevent which defendant used a deadly weapon, is not sufficient to justify it, but the circumstances must be sufficient to excite the fears of a reasonable man, and the attacking party must have acted under the influence of such fears alone. It is not necessary, however, to justify the use of a deadly weapon, that the danger be actual; it is enough that it be apparent danger, such an appearance as will induce a reasonable person in defendant's position to believe that he was in imminent danger of great bodily harm. Upon such appearance the party may act with safety, nor will he be held accountable, though it would appear afterwards that the indications upon which he acted were wholly fallacious and that he was in no actual peril. The rule in such a case is that: What would a reasonable person, a person of ordinary caution, judgment, and observation, in the position of defendant, seeing what he saw, and knowing what he knew, honestly believe from the situation and these surroundings? If such reasonable person, so placed, would have been justified in believing himself in such peril, and acting upon such appearances.

Indorsed upon this charge is the following: "Refused, because the charge is not complete, and is not intelligent, as written."

(5) Unless each juror is separately and

severally satisfied, beyond a reasonable doubt, of the defendant's guilt, you should find him not guilty.

The other facts sufficiently appear from the opinion of the court.

Mitchell & Hughston, of Florence, A. H. Carmichael, of Tuscumbia, and Smith, Wilkinson & Smith, of Birmingham, for appellant.

The sheriff and deputy sheriff have denied positively any knowledge of the negro Black, and the defendant had a right to contradict these positive denials. 45 N. Y. 549, 6 Am. Rep. 140; 46 Misc. Rep. 80, 91 N. Y. Supp. 382; 178 Cal. 616, 174 Pac. 61; 40 Cyc. 2778; 133 Ala. 208, 32 South. 237. See, also, 89 Ala. 165, 7 South. 414; 72 Fla. 108, 72 South. 833; 68 Atl. 49; 91 Ark. 200, 120 S. W. 985. Although charges may be upon the effect of evidence, if properly asked, they should be given. Section 5362, Code 1907. Counsel discuss other assignments of error, but without further citation of authority.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The court's action as to the plea in abatement and the motion to quash was proper. 4 Michie's Ala. Dig. p. 113; Reeves, alias Welton, v. State, 17 Ala. App. 684, 88 South. 197. There was no error relative to the evidence of the sheriff and deputy sheriff. 79 South. 677. There was no error in the court's oral charge. 159 Ala. 14, 48 South. 858; 204 Ala. 476, 85 South. 817.

BRICKEN, P. J. [1] The defendant was indicted for murder in the first degree. On January 5, 1920, the defendant was duly and legally arraigned upon this indictment, and, being present in open court and attended by his counsel, he pleaded not guilty, and the 9th day of January, 1920, was set as the day for the trial. On that day (January 9, 1920) the defendant for the first time filed a plea in abatement to the indictment. The court sustained the motion of the solicitor to strike said plea, upon the grounds that the defendant had on a prior day of the court pleaded to the merits of the indictment and that therefore his plea in abatement came too late. This ruling of the court is insisted upon as being error, but under the statute (Code 1907, § 7573) and several decisions of this court and the Supreme Court it appears that the ruling was without error. Crawford v. State, 112 Ala. 1, 21 South. 214; May v. State, 115 Ala. 14, 22 South. 611; Rogers v. State, 166 Ala. 10, 52 South. 33; Wise v. State, 11 Ala. App. 72, 66 South. 128; 4 Mich. Ala. Dig. p. 113, sec. 176.

The motion to quash the venire was properly overruled. Acts 1909, § 29, p. 305; Clarence Reeves, alias Cecil Welton, v. State, 17 Ala. App. 684, 88 South. 197; Sallie Garner v. State, 206 Ala. 56, 89 South. 69.

[2] On cross-examination of the sheriff, George Mitchell, and the deputy sheriff, Dewey Mitchell, the court sustained the state's objections to numerous questions propounded by defendant's counsel to these witnesses, by which the defendant sought to show the whereabouts of one Aaron Black, the negro man who, it was proven without dispute, bought a pint of whisky from defendant in the presence of deceased and Deputy Sheriff Dewey Mitchell on the night of and just immediately before the killing of Anderson. In this there was no error. The person in question had not been ordered subpœnaed by either side as a witness in the case, and it does not appear how his whereabouts at the time of the trial could shed any light upon the issues involved.

[3, 4] If the purpose of this cross-examination was, as stated by the defendant's counsel, "I am asking that, to know where he is, in order to use him as a witness," this would not be sufficient to show the relevancy or even admissibility of such testimony, as no request was made by defendant that a subpœna be issued for this man as a witness before entering upon the trial or during the progress thereof. The well-recognized rule is that a wider latitude is allowable on cross-examination than upon the direct examination of a witness. This latitude is usually permissible for the purpose of testing the memory, sincerity, etc., of the witness, and while no universal rule can be laid down, it has been always held that this is a matter which necessarily must be left largely to the discretion of the trial court, and unless such discretion is abused the rulings of the trial court will not be revised on appeal. No such abuse is shown by the record here, and there was no error of a prejudicial nature committed by the court in this connection.

Other rulings of the court upon the testimony, to which exceptions were reserved, have been examined, and are free from error.

[5] At the request of defendant, the charge of the court to the jury was made in writing. This charge has had our very careful consideration, and we are of the opinion that the criticism to the effect that portions of the charge were upon the effect of the evidence, and therefore error, is not well taken. Murray v. State, 13 Ala. App. 175, 69 South. 354. We are also of the opinion that the charge when taken and considered as a whole, and it must be thus considered, is free from error prejudicial to the substantial rights of the defendant. The court appears to have fairly stated the tendencies of the evidence on both sides, as well as the law applying to the theory relied upon both by the state and the defendant, and under this charge it was for the jury to say whether the version of the state or that of the defendant was cor-

rect. Blevine v. State, 204 Ala. 476, 85 South. 817.

[6-9] In the refusal of several written charges requested by defendant, the court indorsed upon each of these charges the reason for its refusal. This is a wise and proper precaution, and tends to assist this court in passing upon questions of this character. Each charge refused to defendant was properly refused, and the reasons assigned by the trial judge for their refusal appear to be well stated. Charge 1 was elliptical and argumentative. Charge 5 does not state the law correctly, and the remaining refused charges are each clearly upon the effect of the evidence, as stated by the trial judge in passing upon them. Their refusal was without error.

Finding no error in the record, the judgment of conviction is affirmed.

Affirmed.

### On Rehearing.

The several strong and vigorous briefs filed in support of the application for rehearing require us to make some answer thereto.

Counsel for appellant decline to insist upon a review of the opinion in so far as the plea in abatement and motion to quash the venire are concerned, and expressly decline to insist upon the right of the defendant to require the sheriff to designate the present whereabouts of Aaron Black, in order that Aaron Black might be summoned as a witness. Counsel now concede that they should have had a subpœna issued for Aaron Black before undertaking to force an examination of the sheriff as to this matter.

While the extent of cross-examination of witnesses is in a large measure left to the discretion of the trial court, which rule of law is stated in the original opinion, we of course do not say, nor intend to decide, that that discretion could be used for the purpose of preventing the introduction of competent and relevant testimony on the trial of a case. A re-examination of the facts disclosed by the record fails to show that any of the rulings of the trial court now complained of resulted in the exclusion of any competent or relevant testimony on the trial of this case.

The undisputed evidence in this case, save the mere conclusion of the defendant that he thought that the sheriff and his deputies were robbers, shows the defendant to be guilty of murder in the second degree at least. Whether the sheriff knew the negro to whom defendant was selling the liquor in violation of law at the time of the fatal shooting could, under the evidence in this case, shed no possible light upon any disputed question at issue, nor could it tend to prove the guilt or innocence of the defendant, or mitigate the offense.

[10] If it be conceded that the sheriff carried the negro out to the scene of killing on the night of the killing, this fact would not have any legitimate bearing upon the guilt or innocence of the defendant, or tend in the least to mitigate the crime. The guilt or fault of the defendant in killing the deputy sheriff, as it is conceded he did, could in no wise or degree be made to depend upon the fact whether the sheriff or his deputy knew the negro to whom the defendant was making the illegal sale, or whether or not he came out there with the sheriff and his posse. Moreover, counsel for appellant insist that they had the right to have the sheriff and his son answer the question whether or not he made arrangements with the negro to go out there and buy liquor from this man, or somebody, and to compel them to answer the question whether or not the negro, Aaron Black, was working and doing what he did with the knowledge and consent of the sheriff and his deputy.

[11, 12] Pretermitting the question as to whether or not, under the evidence of this case, such proof was immaterial and irrelevant; but, even if it were not, no possible injury was done the appellant, for the reason that both the sheriff and his deputy positively and repeatedly denied that they did carry the negro out there, or that he was acting under instruction, or with their knowledge or consent, in buying whisky from defendant or any one else on the night of the fatal difficulty. On page 39 of the transcript, the son of the sheriff, who was his deputy, testified on cross-examination:

"We did not carry the negro out with us. We did not arrange for him to come. I did not know that any of the party had arranged for him to come."

And at the top of page 40 of the transcript he testified, also on cross-examination, as follows:

"The negro was not in the employ of the jail that night, and he was not in my employ. He was not in the employ of Carl Anderson."

And at page 43 of the record the sheriff himself testified:

"I did not know him, any more than I know most all negroes. I had not seen him before that night that I know of. I had not talked with him before I went out there."

And at the top of page 44 he testified:

"The negro was not in my employ that night, nor was he working under my directions."

So it affirmatively appears that the sheriff and his deputy did in substance answer every question asked them as to which complaint is now made. After the sheriff had testified that the negro was not in his employ that night, and that he was not working under his direction, counsel for defendant immedi-

ately thereafter asked the witness the following question:

"Was he working and doing what he did with your knowledge and consent?"

The witness having answered this question specifically and repeatedly, of course, the trial court could not be put in error for excusing him from answering it further.

[13] It is very true, as counsel for appellant contend, that the trial court cannot refuse a correct charge, requested in writing, merely because it is upon the effect of the evidence; yet, if the charge was properly refused, the fact, if it be a fact, that the court assigned an improper reason, would not make its refusal error. It is certain that such of the requested charges for the defendant which were refused by the trial court were properly so refused. The proper reason was assigned as for the refusal of some of them, but it is probable that an improper reason was assigned as to the refusal of others; and to this extent only do we desire to modify or qualify anything that was said in the opinion before. Several of the refused charges, the refusal of which is insisted upon as error, were clearly argumentative, and some of them clearly invaded the province of the jury, in that they requested the court to state as a matter of law that which clearly was a question for the jury under the evidence.

[14] So far as concerns the insistence of appellant for error respecting portions of the oral charge to which exceptions were reserved, we deem it unnecessary to say anything further than was said in the original opinion, which seems to answer all the contentions of the appellant. It may not be out of place, however, to say that those portions of the oral charge to which exceptions were reserved were not stated by the court as facts, but were stated to the jury only as showing the contention of the state and of the defense as to respective theories of the case and parts of the evidence. This is not only proper, but is often necessary, in order that the jury may fairly understand and weigh the evidence in support of and against the several contentions or theories of the state and the defense.

[15] We cannot agree with counsel for appellant in their contention that the undisputed evidence in this record affords nothing to show that the defendant had any knowledge of the identity of the officers, or that they were attempting to arrest him for selling prohibited liquors, or that he was resisting a lawful arrest. It was clearly open to the jury to infer that the defendant, at the time he fired the fatal shot, knew that the persons at whom he was shooting were then attempting to arrest him for the violation of the prohibition law. He certainly knew that he was then violating the law and was liable to arrest; and there is evidence in the record to show that the officers informed him of the fact that they were officers and demanded his arrest before the fatal shot was fired. Dewey Mitchell, the son of the sheriff, who was attempting to arrest the defendant when he fired the fatal shot, among other things testified as follows:

"Tom Stevenson turned, coming towards us. I flashed my light, and told him to throw up his hands and consider himself under arrest. I had my light in my left hand. My pistol was down by my side in my right hand. Stevenson came up with his pistol, with both hands up even with his face. He did not say anything. I said: 'Don't shoot; it is the officers.' Then he commenced shooting, about the time I got that out of my mouth."

Moreover, there was some evidence as to threats by defendant as to what he would do if the officers ever tried to arrest him; one witness stating in substance that, about six weeks prior to the killing, defendant stated to him "that, if the officers ever came after him, they would not go back as they came," and further, "that if they arrested him he would kill them before being arrested."

With the modification of the original opinion to the extent as herein stated, we adhere to the conclusion therein announced, and must hold that the application for rehearing is not well taken, and is therefore overruled.

Application overruled.